UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CIV-60966-BLOOM

CHARTER SCHOOL CAPITAL, INC.,

    Plaintiff,

v.

N.E.W. GENERATION PREPARATORY HIGH
SCHOOL OF PERFORMING ARTS, INC., an
active Florida non profit corporation, and
KIONNIE MAURA, individually,

    Defendants.
_____/

### ORDER DENYING ISSUANCE OF PREJUDGMENT WRIT OF REPLEVIN

**THIS CAUSE** is before the Court upon Plaintiff Charter School Capital, Inc.'s ("CSC") Emergency Motion for Pre-Judgment Writ of Replevin, ECF No. [9] (the "Motion"). Plaintiff seeks issuance of a prejudgment writ of replevin pursuant to Fla. Stat. § 78.068 and Fed. R. Civ. P. 64, as asserted in Count I of Plaintiff's Verified Complaint, ECF No. [1]. The Court has carefully reviewed the Motion, the facts alleged in the Verified Complaint, the documents attached thereto, and the relevant law, and is otherwise fully advised. For the reasons set forth below, the Court denies the Motion.

### I.   BACKGROUND

Broadly stated, this is a breach of contract action for non-payment on a factoring receivables financing arrangement between Plaintiff and Defendant N.E.W. Generation Preparatory High School of Performing Arts, Inc. ("NG"). NG operates a charter school in Broward County, Florida. Compl. ¶ 11. CSC is in the business of factoring, which it aptly describes as "a method of financing where accounts receivable are purchased at a discount and then profit is realized when the discounted accounts receivable are paid in full." *Id*. ¶ 6-7. As

alleged in the Complaint, NG in part financed its operations by selling to CSC certain payment obligations owing to NG by Broward County (the "District Sponsor"). The transaction documents, executed on April 4, 2014, include a Receivables Purchase Agreement (the "RPA"), Notice of Assignment of Amounts Payable, Paying Agency Agreement and a Terms Letter. *See* ECF Nos. [1-1], [1-2], [1-3], [1-4]. The RPA defines the transaction between the parties as a purchase and sale of the payment receivables, and requires NG to direct the District Sponsor to make payments on those receivables to a separate, specified, segregated bank account for the benefit of CSC (under an attendant Account Control Agreement (the "ACA") not attached to the Complaint). *See* Compl. ¶¶ 15-16; RPA §§ 2.01(a), 3.02(e), 4.02(a)(v), 5.01(d); Exh. C. The account established under the ACA was verified as operational as of approximately March 18, 2015. Compl. ¶ 20.

As part of the parties' initial transaction under this financing arrangement, on April 14, 2014, CSC purchased from NG the May 2014, June 2014 and July 2014 Florida Education Finance Program ("FEFP") payments ("May/June/July 2014 FEFP Payments"), as defined in the transaction documents (FEFP being the name of the payments made by the District Sponsor). *Id*. ¶ 17. The transaction assigned the May/June/July 2014 FEFP Payments a gross value of $118,242.00, with CSC paying to NG an upfront purchase price of $91,304. *Id*. Two follow on fundings occurred: one on February 13, 2015, where CSC purchased the May 2015 FEFP payments, with an assigned gross value of $88,868.00, for an upfront price of $68,912.00; and one on March 20, 2015, where CSC purchased the June 2015 and July 2015 FRFP payments, with a combined assigned gross value of $172,558.00, for an upfront purchase price of $134,546.00. *Id*. ¶¶ 18-19. The transaction documents allow for interest at 18%. *Id*. ¶ 35.

On or about April 25, 2015, the District Sponsor was to have paid the May 2015 FEFP payments into the segregated bank account. *Id*. ¶ 21. As of May 8, 2015, the date CSC filed its

Verified Complaint, the May 2015 FEFP payments had not been deposited into that account. *Id*. ¶ 22.

On May 1, 2015, Defendant Kionnie Maura, CEO of NG, informed CSC that NG was considering the option of voluntarily ceasing operations. *Id*. ¶¶ 5, 24. NG is not required to voluntarily close. *Id*. ¶ 28. NG's closure would mean that NG would no longer receive further FEFP payments from the District Sponsor. *Id*. ¶ 26. CSC alleges that NG is refusing to take part in a process under which it would be able to terminate its charter and close but still receive its FEFP payments from the District Sponsor and complete its obligations to CSC prior to closure. Id. ¶¶ 28-32.

CSC alleges that it has reason to believe that NG has either diverted the May 2015 FEFP payment or made it such that the District Sponsor is refusing to the fund the May 2015 FEFP payment, and that NG has already used that payment for its own business purposes. *Id*. ¶¶ 33-34. CSC states that NG's "willful actions" to either divert CSC's funds for its own use or cause the District Sponsor to refuse to release those funds, coupled with NG's admitted consideration of immediate closure, evidences NG's wasting of CSC's property. *Id*. ¶¶ 45-46. CSC alleges that it is owed a total principal amount of $210,400.00 for the May 2015, June 2015 and July 2015 FEFP payments it purchased; accrued interest (of 18%) as of May 8, 2015 of $322.20; and that (at least) the $71,600.00 current value of the May 2015 FEFP payment is past due. *Id*. ¶¶ 35-36. The transaction documents further allow for per diem interest at $35.80 per day, as well as reasonable attorneys' fees and costs. *Id*. ¶¶ 37-38.

CSC seeks issuance of a prejudgment writ of replevin for the $210,400.00 in principal, $322.20 in interest (totaling $210,722.20), as well as attorneys' fees, court costs and damages against NG. *See id*. ¶¶ 39-50. It is prepared to immediately post cash into the Court registry in the amount of two times the current balance due and sought, *i.e.*, $421,445.00. *Id*. ¶¶ 47-48.

## II. DISCUSSION

Federal Rule of Civil Procedure 64 governs the seizure of property in connection with a civil action. It provides:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

FED. R. CIV. P. 64(a). Replevin is a remedy that is expressly available under this Rule. FED. R.CIV .P. 64(b).

Replevin is a statutory remedy under Florida law that permits "[a]ny person whose personal property is wrongfully detained by any other person [to] recover said personal property and any damages sustained by reason of the wrongful taking or detention . . . . Fla. Stat. § 78.01. "Section 78.01 provides two alternative procedures for obtaining a writ of replevin under Florida law prior to entry of a final judgment awarding possession." *California First Leasing Corp. v. Orlando Sun Resort & Spa, LLC*, 2009 WL 2423108, at *1 (M.D. Fla. July 15, 2009). "Pursuant to Sections 78.065 and 78.067, and in the absence of an effective waiver, the defendant must be given notice and a show cause hearing held before the writ of replevin may issue prior to the entry of final judgment. Pursuant to section 78.068, the prejudgment writ may issue without notice and a hearing, but the plaintiff must post a bond." *Brown v. Reynolds*, 872 So. 2d 290, 294 (Fla. 2d DCA 2004). *See also Gazil, Inc. v. Super Food Servs., Inc.*, 356 So. 2d 312, 313 (Fla. 1978) (Fla. Stat. § 78.068 "meets the five part test for minimum due process requirements").

Here, CSC has elected to proceed under section 78.068. The requirements of that provision include that:

   1. "the grounds relied upon for the issuance of the writ [must] clearly appear from specific facts shown by the verified petition";

    2. the Count find "that the defendant is engaging in, or is about to engage in, conduct that may place the claimed property in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action or that the defendant has failed to make payment as agreed"; and

    3. the petitioner "post bond in the amount of twice the value of the goods subject to the writ or twice the balance remaining due and owing."

Fla. Stat. § 78.068(1)-(3). The Verified Complaint sets forth facts which could support a preliminary finding of NG's concealment, waste or removal of the May 2015, June 2015 and July 2015 FEFP payments – funds in which CSC has a property interest.

"The law in Florida is clear that a writ of replevin may only issue against specific property as to which a claimant has a possessory right." *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1549 (S.D. Fla. 1996) (citing, e.g., *Prestige Rent-A-Car v. Advantage Car Rental and Sales,* 656 So. 2d 541 (Fla. 5th DCA 1995), *Morse Operations, Inc. v. Superior Rent-A-Car, Inc.,* 593 So. 2d 1079 (Fla. 5th DCA 1992)). "Because replevin involves recovery of the personalty itself, the personal property subject to recovery via replevin has always been restricted to the recovery of tangible personalty capable of specific identification and manual seizure." *Land-Cellular Corp. v. Zokaites*, 463 F. Supp. 2d 1348, 1353 (S.D. Fla. 2006). It is "inappropriate and unavailable when the personalty sought to be recovered is, as a practical matter, incapable of being specifically described . . ., located, identified, and seized . . . ." *Id.* (and "find[ing] no authority upon which it could rely to allow [petitioner] to subject [possessor's] bank accounts and accounts receivable to the writ") (citing *Williams Mgmt. Enters., Inc. v. Buonauro*, 489 So. 2d 160, 163-168 (Fla. 5th DCA 1986)). Replevin is not designed "for the purpose of recovering the amount which might be found to be due from the defendant to the plaintiff on account, but to recover the property in dispute." *Johnson v. Clutter Music House*, 55 Fla. 385, 46 So. 1, 2 (Fla. 1908). "Nor can a writ of replevin reach intangible property in the

form of checking accounts." *Textron Fin. Corp. v. Unique Marine, Inc.*, 2008 WL 4716965, at *4 (S.D. Fla. Oct. 22, 2008).

Here, CSC seeks to replevy funds which may be in NG's possession (but, on the facts alleged, may still be with the District Sponsor) based on CSC's possessory interest in those funds under the parties' agreement and as payment for CSC's purchase of the May 2015, June 2015 and July 2015 FEFP payment receivables. Funds in a deposit account are not the type of specific, tangible property capable of particular identification and manual seizure toward which the writ of replevin is aimed. This does not foreclose other avenues of recovery for CSC, including, e.g., freezing accounts or assets and like forms of temporary injunctive relief, and in no way speaks to the merits of CSC's breach of contract claims. But replevin is simply the wrong tool for the relief CSC wants here.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion, ECF No. [9], and CSC's request for issuance of a prejudgment writ of replevin pursuant to Fla. Stat. § 78.068 and Rule 64 in Count I of its Verified Complaint, ECF No. [1], are **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 12th day of May, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record