UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CIV-60966-BLOOM

CHARTER SCHOOL CAPITAL, INC.,

    Plaintiff,

v.

N.E.W. GENERATION PREPARATORY HIGH
SCHOOL OF PERFORMING ARTS, INC., an
active Florida non profit corporation, and
KIONNIE MAURA, individually,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

**THIS CAUSE** came before the Court on Plaintiff Charter School Capital, Inc.'s ("CSC") Motion for Default Final Judgment, ECF No. [24] (the "Motion"). Through the Motion, Plaintiffs request that the Court enter a default final judgment against Defendants Kionnie Maura and N.E.W. Generation Preparatory High School of Performing Arts, Inc. ("NG", together, "Defendants"). The Court has reviewed the Motion, the affidavits submitted therewith, ECF Nos. [24-1] (the "Damages Affidavit"), [23] (affidavit as to Maura's military status), and the record in this case. For the reasons set forth below, the Court grants the Motion.

    A.    **Determination of Default Judgment**

Federal Rule of Civil Procedure 55 provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). This Circuit maintains a "strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). However, default judgment is entirely appropriate and within the district

court's sound discretion to render where the defendant has failed to defend or otherwise engage in the proceedings. *See*, *e.g.*, *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 Fed. App'x 908, 910 (11th Cir. 2011); *Dawkins v. Glover*, 308 Fed. App'x 394, 395 (11th Cir. 2009); *In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985); *Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1113 (S.D. Fla. 2007); *see also Owens v. Benton*, 190 Fed. App'x 762 (11th Cir. 2006) (default judgment within district court's direction).

A defendant's "failure to appear and the Clerk's subsequent entry of default against him do not automatically entitle [the p]laintiff to a default judgment." *Capitol Records v. Carmichael*, 508 F. Supp. 2d 1079, 1083 (S.D. Ala. 2007). Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004), but instead acts as an admission by the defaulted defendant as to the well-pleaded allegations of fact in the complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citations omitted); *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla.2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997).

Therefore, before granting default judgment, "the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Security, LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007).

CSC filed its Verified Complaint, ECF No. [1], on May 8, 2015. Service of the summons and Verified Complaint was executed on Maura on May 14, 2015, 2015, and on NG on May 22, 2015. ECF No. [16]. Neither Defendant responded by the required deadline of June 15, 2015. On June 16, 2015, the Court ordered Defendants to file their responses on or before June 19, 2015. ECF No. [18]. Defendants failed to do so. CSC filed an application for the Clerk's entry of default on June 20, 2015. ECF No. [19]. On June 25, 2015, the Clerk entered default against both Defendants. ECF No. [20]. The Court subsequently directed CSC to file a motion for default judgment by July 6, 2015. ECF No. [21]. CSC timely filed the instant Motion.

Defendants were properly defaulted. As such, they have admitted the well-pleaded allegations in the Verified Complaint, as well as the allegations contained in CSC's verified motion for a preliminary injunction, ECF No. [15] (the "PI Motion"), which are supported by the documents incorporated therein and the affidavits submitted with the instant Motion.

### B.   Factual Admissions and Findings

NG operates a charter school in Broward County, Florida. Compl. ¶ 11. CSC is in the business of factoring, which it aptly describes as "a method of financing where accounts receivable are purchased at a discount and then profit is realized when the discounted accounts receivable are paid in full." *Id*. ¶ 6-7. NG, in part, financed its operations by selling to CSC certain payment obligations owing to NG by Broward County (the "District Sponsor"). The transaction documents, executed on April 4, 2014, include a Receivables Purchase Agreement

3

(the "RPA"), Notice of Assignment of Amounts Payable, Paying Agency Agreement and a Terms Letter. *See* ECF Nos. [1-1], [1-2], [1-3], [1-4]. The RPA defines the transaction between the parties as a purchase and sale of the payment receivables, and requires NG to direct the District Sponsor to make payments on those receivables to a separate, specified, segregated bank account for the benefit of CSC (under an attendant Account Control Agreement (the "ACA") not attached to the Verified Complaint). *See* Compl. ¶¶ 15-16; RPA §§ 2.01(a), 3.02(e), 4.02(a)(v), 5.01(d); Exh. C. The account established under the ACA was and is operational. Compl. ¶ 20.

As part of the parties' initial transaction under this financing arrangement, on April 14, 2014, CSC purchased from NG the May 2014, June 2014 and July 2014 Florida Education Finance Program ("FEFP") payments ("May/June/July 2014 FEFP Payments"), as defined in the transaction documents (FEFP being the name of the payments made by the District Sponsor). *Id*. ¶ 17. The transaction assigned the May/June/July 2014 FEFP Payments a gross value of $118,242.00, with CSC paying to NG an upfront purchase price of $91,304. *Id*. Two follow on findings occurred: one on February 13, 2015, where CSC purchased the May 2015 FEFP payments, with an assigned gross value of $88,868.00, for an upfront price of $68,912.00; and one on March 20, 2015, where CSC purchased the June 2015 and July 2015 FRFP payments, with a combined assigned gross value of $172,558.00, for an upfront purchase price of $134,546.00. *Id*. ¶¶ 18-19. CSC, therefore, purchased and is the owner of the May, June and July 2015 FEFP Payments. *Id*. ¶ 27. The transaction documents allow for interest at 18%. *Id*. ¶ 35; RPA § 7.16.

On or about April 25, 2015, the District Sponsor was to have paid the May 2015 FEFP payments into the segregated bank account. *Id*. ¶ 21. CSC did not receive the May 2015 FEFP payment into the segregated account when due in late April. *Id*. ¶ 22.

On May 1, 2015, Maura, CEO of NG, informed CSC that NG was considering the option of voluntarily ceasing operations. *Id*. ¶¶ 5, 24. NG is not required to voluntarily close. *Id*. ¶ 28. NG's closure would mean that NG would no longer receive further FEFP payments from the District Sponsor. *Id*. ¶ 26. NG refused to take part in a process under which it would be able to terminate its charter and close but still receive its FEFP payments from the District Sponsor and complete its obligations to CSC prior to closure. *Id*. ¶¶ 28-32.

Again, in late May, CSC did not receive the June 2015 FEFP payments into the segregated account. Pl. Mtn. On May 28, 2015, the District Sponsor informed CSC that the May 2015 and June 2015 FEFP payments were made to NG, and made to a different account, designated by NG (the "NG Operating Account"). *Id*. Maura had specifically informed CSC that NG had not redirected the District Sponsor to fund payments outside of the segregated account. Maura and NG have now ceased communications with CSC. *Id*. NG has and will continue to deliberately divert the Payments (which are property of CSC) to the NG Operating Account, to which CSC does not have access, and then has and will continue to use those funds for NG's own business purposes (including, as a specific example, to satisfy NG's obligations owed to unsecured creditors). *Id*.; Compl. ¶¶ 33-34. NG and Maura's actions in this regard – including as to the disregard of CSC's property – were willful or reckless. Compl. ¶¶ 43-46, 59-62.

CSC is owed a total principal amount of $210,400.00 for the May 2015, June 2015 and July 2015 FEFP payments it purchased; accrued interest (of 18%, or $35.80 per diem) as of July 6, 2015 of $2,040.60; for a total of $212,440.60. *See* Compl. ¶¶ 35-36; Aff. on Damages ¶ 7. The transaction documents further allow for reasonable attorneys' fees and costs. *Id*. ¶¶ 37-38; RPA § 7.16.

5

### C. Conclusions of Law

The Verified Complaint asserts three causes of action: (1) a request for a prejudgment writ of replevin against NG, (2) a breach of contract claim against NG, and (3) a breach of contract claim against Maura under Florida Statutes section 617.0834(1)(b)(3). CSC sought a writ of replevin as prejudgment relief, which the Court denied. ECF No. [12] (order denying emergency motion for pre-judgment writ of replevin), *Charter Sch. Capital, Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc.*, 2015 WL 2239061 (S.D. Fla. May 12, 2015); *see also* ECF No. [17] (order denying motion for preliminary injunction). Accordingly, the Motion only addresses, and the Court will only consider, CSC's breach of contract claims.

New York law governs here. *See* RPA § 7.03. "The essential elements of an action for breach of contract under New York law are: (1) formation of a contract between the parties; (2) performance by [plaintiff]; (3) non-performance by [defendants]; and (4) resulting damages to [plaintiff]." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246-47 (11th Cir. 2002) (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)). The admitted facts establish that NG and CSC entered into a contractual agreement for sale and purchase of FRFP Payments, and that NG breached that agreement by failing to remit payment for the May 2015, June 2015 and July 2015 FEFP Payments to the proper account when required to do so. In addition, the admitted facts include that Maura engaged in willful or reckless conduct in disregard of CSC's property when diverting the FEFP Payment or causing the District Sponsor to refuse to fund the FEFP payments. This establishes her liability under Fla. Stat. § 617.0834(1)(b)(3).

### D. Damages

"Where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required." *Suntrust Bank v. Ramsden*, 2011 WL 5508817, at *1 (S.D. Fla. Nov. 8, 2011); *SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. . . . We have held that no such hearing is required where all essential evidence is already of record."). Here, an evidentiary hearing is not required because the damages CSC seeks against NG and Maura are liquidated and documented in the record. *See* Aff. on Damages. CSC is owed a total of $212,440.60, as well as reasonable attorneys' fees and costs, plus post-judgment interest.

### E. Conclusion

For the foregoing reasons it is hereby **ORDERED AND ADJUDGED** that the Motion, ECF No. [24], is **GRANTED**, as set forth herein. Judgment for CSC will be entered by separate order. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED** as moot, and all pending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 9th day of July, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record